Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modification.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer on 18 June 1995.
3. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 18 June 1995 when he slipped and injured his left knee.
4. Plaintiffs average weekly wage was $555.50.
5. A Form 24 Application to Terminate or Suspend Payment of Compensation was approved by the Commission and filed on 26 August 1997, terminating plaintiffs temporary total disability benefits effective 16 January 1997.
6. Plaintiff received temporary total disability benefits from 12 September 1995 through August 1997.
7. The parties stipulated into evidence as Stipulated Exhibit 1, without need for further authentication or verification, plaintiffs medical records from the following providers:
• Durham Ambulatory Surgical Center;
• Durham Clinic, P. A.;
• David L. Williamson, D.C., N.S.;
• Duke University Medical Center; and
• Durham Regional Hospital.
8. The parties stipulated into evidence as Stipulated Exhibit 2, without need for further authentication or verification, plaintiffs tax returns from 1996, 1997, and 1998.
9. The parties stipulated into evidence as Stipulated Exhibit 3, without need for further authentication or verification, expense and income information from plaintiffs business from 1996.
10. The parties stipulated into evidence as Stipulated Exhibit 4, without need for further authentication or verification, expense and income information from plaintiffs business from 1997.
11. The parties stipulated into evidence as Stipulated Exhibit 5, without need for further authentication or verification, expense and income information from plaintiffs business from 1998.
12. The parties stipulated into evidence as Stipulated Exhibit 6, without need for further authentication or verification, Industrial Commission Forms.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a forty year-old male who had earned a GED. Plaintiff has worked primarily in restaurants, but he worked briefly for IBM and drove a delivery truck.
2. Plaintiff began working at Applebees in August 1993 as a cook. He progressed to a shift supervisor and later became assistant general manager. On 18 June 1995, plaintiff was working as an assistant general manager, which involved a lot of walking around. Plaintiff was on his feet most of the shift except for a brief period for paperwork, dinner, and breaks. Plaintiff had to be able to fill in for every position in the restaurant.
3. On 18 June 1995, plaintiff slipped and fell at work in the course and scope of his employment, injuring his left knee. As a direct and proximate result of this fall, plaintiff suffered a left anterior cruciate ligament tear.
4. Plaintiff came under the care of William A. Somers, M.D., a Durham orthopedic surgeon. On 28 August 1995, Dr. Somers performed a surgical reconstruction of plaintiffs anterior cruciate ligament.
5. Defendants accepted plaintiffs claim on a Form 63 Notice to Employee of Payment of Compensation Without Prejudice to Later Deny the Claim, dated 13 November 1995. Defendants did not contest plaintiffs claim or their liability during the time allowed; thus, pursuant to G.S. 97-18(d), plaintiffs claim was accepted.
6. For several years before his 18 June 1995 compensable injury, plaintiff had had problems with occasional left knee swelling. However, plaintiffs knee problems did not become disabling until his 18 June 1995 compensable injury, which caused or accelerated and exacerbated his knee condition.
7. On 3 April 1996, after continuing to experience pain, plaintiff underwent an excision of an osteophyte and nerve decompression also performed by Dr. Somers.
8. Although plaintiff did not have objective findings, he continued to complain of pain. As early as 26 April 1996, Dr. Somers was of the opinion that plaintiff should have been able to return to restaurant work in approximately one month. At that point, plaintiff had a clinically stable knee with an excellent range of motion that was not tender, but he had some thickening of the tissues medially.
9. After continued complaints of pain, Dr. Somers explored the possibility of performing a high tibial osteotomy on plaintiff.
10. On 14 November 1996, plaintiff determined that he did not wish to undergo the high tibial osteotomy. Plaintiff continued to be tender at the medial joint, had a full range of motion of the knee, and was stable to the anterior, posterior, varus, and valgus. On 14 November 1996, plaintiff had reached maximum medical improvement of his left leg, and he retained a twenty-five percent permanent partial impairment rating. Plaintiff also had problems with his ankle at that time, but Dr. Somers was of the opinion that plaintiffs ankle condition was not causally related to his knee injury.
11. In November 1996, plaintiff started a gutter business, D D Gutter and Roofing, with a neighbor. This business manufactured and installed gutters and performed some roofing. Plaintiffs wife is listed as the owner and president of the business; however, she is also employed full-time as a manager of an apartment complex. Plaintiff is the vice president of the business and responsible for talking with contractors, writing invoices, ordering materials, generating business, performing technical consultations, inspecting jobs, and making job quotes. Plaintiffs wife keeps the financial records and calculates the taxes. The company has had as many as eight employees, but generally has three or four. Plaintiff has never physically worked on the roofs or carried bundles of shingles around the job site.
12. Plaintiff submitted business records from D D Gutter and Roofing. However, these records did not include a complete list of checks drawn on the checking account from that business. Checks were sometimes written for personal rather than business expenses, and the personal items were not included in the submitted records. There was also evidence that plaintiff and his wife had occasionally loaned money to the business. Gross sales for 1996 (November and December) were $13, 000.00. During that time, plaintiff continued to draw temporary total disability benefits at the rate of $370.35 per week. In 1997, the gross receipts were $54,841.00 and in 1998, the gross receipts of the company were $61,725.00. Income tax returns noted that 1998 was the first year of profit. However, deductions including depreciation, bad debt and the like, affect the profitability of the business.
13. D D Gutter and Roofing deducts expenses for advertising, vehicles, gas, mileage, tools and equipment, materials, supplies, salaries, and consulting fees. Plaintiffs family also allocates twenty-five percent of the family's electric bill to the business as an expense. Tax records, which showed profits and losses of the company, do not accurately reflect the worth of the company and do not indicate plaintiffs actual wage earning capacity.
14. Since being released by Dr. Somers in November 1996, plaintiff has not looked for work outside of his business with D D Gutter and Roofing.
15. Plaintiff now spends a portion of his time taking care of his children.
16. When plaintiff was released on 14 November 1996, he was restricted from activities requiring climbing, working on unleveled surfaces, and scaffolding. Plaintiff was advised to avoid prolonged squatting and kneeling and was told that he would not be able to perform these functions on a repetitive basis.
17. As late as October 1998, Dr. Somers was of the opinion that, because of plaintiffs knee condition and his unrelated ankle problem, plaintiff was not able to work in a job that required him to stand for prolonged periods. Further, prohibited activities for plaintiff included kneeling, squatting, crawling, and climbing. However, at that date, Dr. Somers did not understand why plaintiff could not return to work in a sedentary position.
18. Plaintiff bears a substantial risk of needing future medical treatment including, but not limited to, one or more knee replacement surgeries, follow-up arthroscopies, and continued medications.
19. From November 1996 and continuing, plaintiff has developed and operates a gutter and roofing business. Plaintiff has dealt with advertisers, workers, suppliers, and potential customers. Although plaintiffs business has not generated a "profit, it has generated substantial revenues due in large part to his efforts and skills. It is likely that plaintiff is compensated for his substantial contribution to the business.
20. Plaintiff is capable of earning wages as a business manager as he has the skills to develop and operate his own business, and he held a responsible managerial position in his employment with defendant-employer.
21. Plaintiffs return to work in his own business in November 1996 was a trial return to work, because he was under work restrictions. Plaintiffs return to work was successful, and he has not produced persuasive evidence of the extent of any continuing diminished earning capacity.
22. On 18 June 1995, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer.
23. As a direct and proximate result of his 18 June 1995 compensable injury, plaintiff sustained an anterior cruciate ligament tear and an aggravation of arthritis in his left knee.
24. As a direct and proximate result of his 18 June 1995 compensable injury by accident, plaintiff was unable to engage in physical activities required by his former job or any other job through 16 January 1997. Special Deputy Commissioner Amy L. Pffeifer terminated plaintiffs temporary total disability compensation on 16 January 1997, the date that the business receipts demonstrated that plaintiff had some wage-earning capacity. Plaintiff was paid temporary total disability benefits through 26 August 1997, when Deputy Commissioner Pffeifers Administrative Decision and Order was filed.
25. As a direct and proximate result of his 8 June 1995 compensable injury, plaintiff retains a twenty-five percent permanent partial impairment of his left leg.
26. Plaintiff bears a substantial risk of requiring future medical treatment for his leg condition, which was proximately caused by his 18 June 1995 compensable injury by accident.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his left knee on 18 June 1995. G.S. 97-2(6).
2. Plaintiff has failed to meet his burden of showing continuing disability. G.S. 97-2(9).
3. As a direct and proximate result of plaintiffs compensable injury, plaintiff retains a twenty-five percent permanent partial disability of the left leg. G.S. 97-31(15).
4. Plaintiff is entitled to compensation for fifty weeks at the rate of $370.34 per week for his permanent partial disability rating to the left leg. G.S. 97-31(15).
5. Defendants are entitled to an offset for total disability benefits paid to plaintiff from 16 January 1997 until 25 August 1997 as those payments were not due and payable when made. G.S. 97-42.
6. Plaintiff is entitled to have defendants provide all reasonably necessary medical treatment arising from this injury by accident to the extent that such treatment tends to effect a cure, give relief, or lessen plaintiffs period of disability. G.S. 97-25.
7. Plaintiff bears a substantial risk of needing further medical treatment due to his compensable injury and is entitled to have such medical treatment provided by defendants. G.S. 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff fifty weeks of compensation at the rate of $370.34 per week for his twenty-five percent permanent partial impairment rating to the left leg. Defendant-employer is entitled to an offset from this amount due to its payment to plaintiff of benefits from 16 January 1997 through 25 August 1997. Any accrued amount shall be paid to plaintiff in a lump sum, subject to a reasonable attorneys fee approved in Paragraph 2.
2. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff under this Award is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the accrued amount due plaintiff shall be deducted and paid directly to plaintiffs counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his compensable injury, including all future medical expenses reasonably necessitated by plaintiffs injury.
4. Defendants shall bear the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER